WO

MW

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Brandon Alexis Martinez Aguilera,

Petitioner,

v.

William P. Barr, et al.,

Respondents.

No. CV-20-01552-PHX-JAT (JFM)

**ORDER**

Petitioner Brandon Alexis Martinez-Aguilera (A# 204-632-967), who is detained in the CoreCivic La Palma Correctional Center ("LPCC"), has filed, through counsel, a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 and Complaint for Injunctive and Declaratory Relief (Doc. 1) and a Motion for Preliminary Injunction (Doc. 2).  As follows, the Petition will be dismissed with leave to amend, and the Motion will be denied as moot.

**I.    Background**

Petitioner is a native and citizen of Mexico.  On an unknown date, he entered the United States, and on July 31, 2018, he was granted Deferred Action for Childhood Arrivals ("DACA"), valid for two years, until July 30, 2020.  (Doc. 1-7.)

On August 16, 2018, Petitioner was convicted of disorderly conduct in violation of section 13-2904(A)(1) of the Arizona Revised Statutes and was sentenced to 180 days in jail, of which 179 days were suspended, along with 3 years of probation.  He was also ordered to abstain from alcohol for the 3-year probation period, prohibited from having

JDDL

contact with the victims, and fined a domestic violence family protection fee.  In September 2018, Petitioner was charged with "causing property damage to a hotel," which was "dismissed after a misdemeanor compromise was approved by a judge on February 5, 2019."  (Doc. 1-3 at 4.)

Petitioner was issued a Notice to Appear ("NTA") on May 31, 2019, charging him as removable from the United States pursuant to Immigration and Nationality Act § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without having been admitted or paroled.  Petitioner was then detained in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  (Doc. 1-8.)  On June 7, 2019, United States Citizenship and Immigration Services ("USCIS") issued a Notice of Action stating that Petitioner's DACA status and employment authorization was "terminated automatically as of the date [his] NTA was issued."  (Doc. 1-9.)

Following a custody redetermination hearing on June 18, 2019, an immigration judge ("IJ") ordered Petitioner released on bond in the amount of $8,000, and he was released the same day.  (Doc. 1-4.)  DHS appealed the IJ's decision to the Board of Immigration Appeals ("BIA").  On April 24, 2020, the BIA sustained DHS's appeal, vacated the IJ's order, and ordered Petitioner to be detained without bond.  (Doc. 1-3.)  The BIA found the IJ's "decision include[d] clearly erroneous findings of fact regarding the [Petitioner's] criminal history that were not properly considered"[1] and concluded that he had "not satisfied his burden to show that he is a not a danger to the community."  (*Id.* at 4.)  On August 4, 2020, Petitioner was again detained.  (Doc. 1 ¶ 4.)

. . . .

. . . .

---

[1] The BIA found that the IJ was clearly erroneous in finding Petitioner's 2018 conviction was for disorderly conduct, rather than for domestic violence; finding that Petitioner had been placed on probation for his 2018 conviction, when he had been sentenced to jail; and finding Petitioner's criminal activity was not preceded or followed by any additional criminal conduct, when the record reflected that he had been criminally charged for a later separate offense.  (Doc. 1-3 at 4.)

## II. Petition

In the Petition, Petitioner names former United States Attorney General William Barr, former Acting DHS Secretary Chad Wolf, ICE Phoenix Field Office Director Albert Carter, former USCIS Senior Official Performing the Duties of the Director Kenneth T. Cuccinelli, USCIS Field Office Director John Ramirez, and USCIS District Director Mario Ortiz. Petitioner brings four grounds for relief.

In Ground One, entitled "Unlawful Punishment," Petitioner claims that his detention is presumptively punitive and violates the Due Process Clause of the Fifth Amendment. He alleges that, unlike "his criminal counterparts," Respondents are not releasing immigration detainees, and "[d]etention itself exposes [Petitioner] to an unacceptable risk of contracting COVID-19 and suffering bodily harm or death as a result."

In Ground Two, entitled "Special Relationship," Petitioner claims that his continued detention violates the Due Process Clause of the Fifth Amendment because Respondents have failed to provide him reasonable care and safety while in their custody. He alleges "Respondents are subjecting [him] to [a] heightened risk of contracting COVID-19, for which there is no vaccine, known treatment, or cure," and thereby "subjecting [him] to a substantial risk of serious harm."

In Ground Three, entitled "Revocation of DACA," Petitioner claims that Respondents' automatic termination of his DACA status based on an NTA, without notice or an opportunity to respond, was arbitrary and capricious in violation of the Administrative Procedures Act ("APA") and the Due Process Clause of the Fifth Amendment.

In Ground Four, Petitioner claims that the BIA's "failure to apply the correct standard of review against its own regulations" amounts to an error of law and violates Petitioner's rights under the Due Process Clause "because it allows the government to infringe on his fundamental liberty interests."

Petitioner asks the Court to: (1) issue a writ of habeas corpus for his immediate release from detention; (2) declare that "Respondents' continued detention in civil

immigration custody of individuals at increased risk for severe illness, including persons with underlying medical conditions that may increase the risk of serious COVID-19, violates the Due Process Clause"; (3) order Respondents to review Petitioner's "bond appeal under the correct standard of review"; (4) order Respondents to "reinstate [Petitioner's] DACA status and allow him to have the remainder of his DACA status until it expires or alternatively allow [him] to respond to the termination notice of his DACA status"; (5) enjoin Respondents from removing him from the United States; and (6) award him costs and reasonable attorneys' fees under the Equal Access to Justice Act.

### III.   Discussion

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). The writ of habeas corpus historically "provide[s] a means of contesting the lawfulness of restraint and securing release." *Department of Homeland Security v. Thuraissigiam*, 591 U.S. ___, 140 S. Ct. 1959, 1969 (2020); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008); *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (habeas corpus "provides a remedy to non-citizens challenging executive detention.").

Habeas corpus review in federal district court is not available for claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," 8 U.S.C. § 1252(g), "arising from any action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9), or "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding [an alien's] detention or release," *Demore v. Kim*, 538 U.S. 510, 516 (2003) (discussing 8 U.S.C. § 1226(e)); *see also* 8 U.S.C. § 1252(a)(2)(B)(ii) (precluding review of other discretionary decisions and actions specified by statute).[2] The limitation

---

[2] *See also Patchak v. Zinke*, 583 U.S. ___, 138 S. Ct. 897, 905 (2018) (finding the jurisdiction-stripping provision which "applie[d] '[n]otwithstanding any other provision of

on review of discretionary determinations "does not, however, preclude 'habeas jurisdiction over constitutional claims or questions of law.'" *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)); *see also Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011) ("claims that the discretionary process itself was constitutionally flawed[,] are 'cognizable in federal court.'" (citations omitted)). But "[h]abeas jurisdiction over such legal and constitutional claims is proper only if they are 'colorable,' i.e., 'the claim must have some possible validity.'" *Hernandez*, 872 F.3d at 988 (citation omitted).

District courts are directed to screen habeas corpus petitions before requiring the government to file a response. A district court may summarily dismiss a habeas corpus petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, foll. 28 U.S.C. § 2254.[3] *See also McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face"); *Clayton v. Biter*, 868 F.3d 840, 845 (9th Cir. 2017) ("District courts adjudicating habeas petitions . . . are instructed to summarily dismiss claims that are clearly not cognizable."); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983) (Rule 4 "explicitly allows a district court to dismiss summarily the petition on the merits when no claim for relief is stated").

**A.    Grounds One and Two – Detention Conditions**

Petitioner's challenges to his continued detention during the COVID-19 pandemic fail to state a claim for habeas corpus relief. Petitioner does not articulate any specific non-conclusory grounds or facts to support that the extraordinary remedy of release is necessary to cure any alleged violation of his constitutional rights. *See Munaf*, 553 U.S. at 693 ("The question, [] even where a habeas court has the power to issue the writ, is whether this be a

---

law,'" included "the general grant of federal-question jurisdiction, 28 U.S.C. § 1331"); 5 U.S.C. § 701(a)(1) (the APA does not apply "to the extent that . . . statutes preclude judicial review.").

[3] The Rules Governing Section 2254 Cases in the United States District Courts apply to habeas corpus proceedings under § 2241. *See* Rule 1(b), foll. 28 U.S.C. § 2254.

case in which that power ought to be exercised." (internal quotations and alternation omitted)); *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 16 (1971) ("As with any equity case, the nature of the violation determines the scope of the remedy."); *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (finding the district court "was permitted to order the reduction of [an ICE detention facility's] population, which may have required the release of some detainees, if such a remedy was necessary to cure the alleged constitutional violations"). The fact that other district courts have granted release does not confer legal or factual grounds for release in this case. *See Roman,* 977 F.3d at 945-6 (advising that "[t]he district court should refrain from relying on declarations filed in other litigation" and any relief granted should reflect the current facts and medical evidence presented in the case).

Similarly, Petitioner's allegations are far too generalized and conclusory to support a claim of unconstitutional conditions of confinement. *See Bell v. Wolfish,* 441 U.S. 520, 535–39 (1979); *Roman*, 977 F.3d at 943–44. Petitioner does not allege that there are any specific circumstances that create a substantial risk that *he* will suffer serious harm. While he cites to a May 2020 district court decision which found conditions posed a substantial risk of serious harm to a medically vulnerable detainee in LPCC, Petitioner fails to address how that decision relates to his individual characteristics or circumstances. Nor does Petitioner set forth any specific allegations concerning the actual conditions, policies, or practices in place in LPCC concerning COVID-19 that he claims are unconstitutional. Instead, he only points to the number of positive detainees and generally alleges that he "is subjected to close physical contact with ICE officers, detention center staff, and other detainees without providing them [sic] with masks, gloves, adequate hand sanitizer, distance, or other measures mandated by experts, government officials, and the CDC to protect people from infection" (Doc. 1 ¶ 118), without offering *any* specific supporting facts, declarations, or other evidence. Absent more, Petitioner fails to state a colorable claim that Respondents have acted in some constitutionally deficient manner with respect to the conditions under which he is detained or that his continued detention poses an

unconstitutional risk of harm that warrants his release from detention. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

### B. Ground Three – DACA Termination

Petitioner also fails to state a cognizable claim arising from the termination of his DACA status and the initiation of his removal proceedings. First, Petitioner lacks standing to challenge the revocation of his DACA status by USCIS, because success on the merits of his claim would not provide him with the redress he seeks–the reinstatement of his DACA status.[4] Petitioner's DACA status, when issued, was valid for two years, until July 2020, and would have expired before he filed this action. He does not set forth any allegations or claims that, but for USCIS's decision, he would have valid DACA status or would be eligible to renew his status now. Therefore, even if the Court determined that the termination of Petitioner's DACA status was unconstitutional or in violation of the APA, reversal of that decision would not lead to the restoration of his status, making his claimed injury not redressable by this Court.

In so far as Petitioner seeks to enjoin his removal by ICE and appears to claim that he should not have been placed in removal proceedings before his DACA status had been terminated (*see* Doc. 1 ¶¶ 79-88), his claim arises from Respondents' decision or action to commence removal proceedings and to execute his removal, which is barred by 8 U.S.C. § 1252(g). *See Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 485 (1999) ("Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations"); *Garcia-Herrera v. Asher*, 585 Fed. App'x 439, 440 (9th Cir. 2014) (concluding that challenge to "ICE's decision not to delay [] removal pending the adjudication of [the petitioner's] application

---

[4] A party invoking federal jurisdiction bears the burden of demonstrating standing for each claim alleged and for each form of relief sought. *Davis v. FEC*, 554 U.S. 724, 734 (2008). To establish Article III standing, a the party "must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quotation marks and brackets omitted).

for relief under DACA" was barred from review under § 1252(g)); *Balogun v. Sessions*, 330 F. Supp. 3d 1211, 1217 (C.D. Cal. 2018) (finding § 1252(g) bar could not be avoided "by describing [the] claim as an attack on ICE's failure to follow its internal guidance"); *cf. Department of Homeland Security v. Regents of the University of California,* 591 U.S. ___, 140 S. Ct. 1891, 1907 (2020) (finding § 1252(g) did not bar challenge to the rescission of the DACA program itself because it was "not a decision to 'commence proceedings,' much less to 'adjudicate' a case or 'execute' a removal order"); *Inland Empire-Immigrant Youth Collective v. Nielsen,* No. 5:17-cv-02048-PSG-SHK, 2018 WL 4998230, at *12 (C.D. Cal. Apr. 19, 2018) ("Plaintiffs challenge neither the issuance of NTAs nor the [DHS's] decisions to commence removal proceedings, review of which would indeed be barred by § 1252(g).").

### C. Ground Four – Bond Appeal

Lastly, Petitioner claims that in granting him release on bond, "the IJ properly considered [his] criminal history" and the "determination that [he was] neither dangerous nor a sufficient flight risk to deny bond [was] plausible" and based "on the totality of the evidence presented by both parties." (Doc. 1 ¶¶ 102-103.) He argues that on appeal of that decision, "the BIA substituted its own reading of the evidence for that of the IJ without applying the deference required by the clear error standard of review" (*id.* ¶ 104), and by "[e]ngaging in its own fact finding as to [Petitioner's] rehabilitation the BIA committed an error of law under the BIA's own regulations and violate[d] due process" (*id.* ¶ 107).

Petitioner's challenge to the BIA's bond appeal decision fails to present a colorable claim of constitutional or legal error. "Although the BIA may not engage in *de novo* factfinding and may only review the IJ's findings under the clearly erroneous standard, the BIA may review 'legal questions, discretion, and judgment ... *de novo*.'" *Perez-Palafox v. Holder*, 744 F.3d 1138, 1145 (9th Cir. 2014) (quoting 8 C.F.R. § 1003.1(d)(3)(ii))). In this instance, the BIA stated the standard of review, identified each of the IJ's factual findings concerning his criminal record that it found to be clearly erroneous, explained the reasons for finding clear error, and then determined that the facts, when assessed against the

relevant factors, led to the conclusion that Petitioner had not met his burden to show that he was not a danger to the community. "The relative weight of [the petitioner's] rehabilitation in the balancing process is not 'factfinding' subject to the clearly erroneous standard of review; it is a matter of discretion and judgment and is subject to de novo review by the BIA." *Guevara v. Gonzales*, 472 F.3d 972, 975 (7th Cir. 2007); *see also Matter of Siniauskas*, 27 I. & N. Dec. 207, 207 (BIA 2018) ("An alien in a custody determination under . . . 8 U.S.C. § 1226(a), must establish to the satisfaction of the Immigration Judge *and the Board* that he or she does not present a danger . . ." (emphasis added)).

Petitioner does not dispute the BIA's clear error findings concerning his criminal record and does not argue that the factors considered could not support the BIA's determination as a matter of law,[5] nor does he contend he was prevented from presenting his case or otherwise denied some specific due process right during his proceedings. Rather, he argues that the BIA improperly rejected the IJ's determination that the evidence of Petitioner's rehabilitation outweighed his criminal history. Thus, although framed as an alleged due process violation and question of law, his claim ultimately challenges the discretionary weighing of the evidence and decision by the BIA, which does not present a colorable claim for habeas corpus review. *See Vilchiz-Soto v. Holder,* 688 F.3d 642, 644 (9th Cir. 2012) ("abuse of discretion challenges recast as alleged due process violations do not present sufficiently colorable constitutional questions"); *Mendez-Castro v. Mukasey*, 552 F.3d 975, 980–81 (9th Cir. 2009) (finding challenge to a discretionary determination that would require the court to reweigh the facts and implicated the "value judgment" of the person or entity deciding the issue was merely "an attempt to 'cloak [] an abuse of discretion argument' in the garb of a question of law" (citations omitted)); *Wallace v.*

---

[5] *Cf. Singh*, 638 F.3d at 1206 ("The *Guerra* factor most pertinent to assessing dangerousness directs immigration judges to consider 'the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses.'" (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006))).

*Gonzales*, 463 F.3d 135, 140–41 (2d Cir. 2006) (dismissing "an 'abuse of discretion' claim disguised as a question of law" which alleged the BIA engaged in impermissible factfinding in determining "the IJ erred in finding adequate evidence of rehabilitation which would outweigh the negative criminal history").

Accordingly, finding Petitioner has failed to state cognizable or colorable grounds for relief, the Court will dismiss the Petition and deny the motion for injunctive relief as moot. *See Munaf*, 553 U.S. at 692 (where a detainee's claims do not state grounds upon which habeas corpus relief may be granted, the petition should be promptly dismissed, and no injunction should be entered). Because the Petition may possibly be amended to state a claim, the Court will dismiss the Petition with leave to file an amended petition that cures the deficiencies outlined above.[6]

**IT IS ORDERED:**

(1) Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 and Complaint for Injunctive and Declaratory Relief (Doc. 1) is **dismissed without prejudice**, **with leave to amend**. Petitioner shall have **30 days** from the date this Order is filed to file an amended petition.

(2) The Clerk of Court shall enter a judgment of dismissal without prejudice of this action, without further notice to Petitioner, if Petitioner fails to file an amended petition within **30 days** from the filing date of this Order and deny any pending unrelated motions as moot.

(3) Petitioner's Motion for Preliminary Injunction (Doc. 2) is **denied** as moot.

. . . .

---

[6] Petitioner is advised that an amended petition may not incorporate any part of the original petition by reference, including any attached supporting materials. An amended petition supersedes the original petition. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the previous petition is treated as nonexistent. *Ferdik*, 963 F.2d at 1262. Thus, any ground for relief that was raised in the previous petition and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in the amended petition. *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

(4)     Petitioner must immediately file a "Notice of Change in Status" with the Clerk of Court upon any material change in Petitioner's custody or immigration status. Any request for relief must be made by separate motion and may not be included in the Notice.

Dated this 21st day of January, 2021.

_____
James A. Teilborg
Senior United States District Judge